# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| JOHN R. NEWLIN, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO. 2:12-CV-430-TLS |
| COMCAST CABLE OF INDIANA, INC., | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The Plaintiff, John R. Newlin, sued Defendant Comcast Cable of Illinois/Indiana/Michigan, Inc., for a violation of the Fair Credit Reporting Act (FCRA) after the Defendant checked the Plaintiff's credit. The Defendant does not deny that it obtained the consumer report. The issue presented by this litigation and the Plaintiff's Motion for Partial Summary Judgment [ECF No. 20] is whether the Defendant had a "permissible purpose" under the FCRA for obtaining the report. Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.

## STATEMENT OF FACTS

In August 2012, the Plaintiff anticipated buying a new home for which he would need to obtain a mortgage. He wanted to buy cable services for his existing home, as well as any new home he would be purchasing. However, the Plaintiff did not want Comcast, the anticipated cable provider, to obtain his credit report out of concern that such an inquiry would negatively impact his credit score. On August 6, 2012, the Plaintiff contacted Comcast using the online instant messaging services available through the company's website. After he had selected the

cable television services he wished to purchase, the following exchange took place between the Plaintiff and the customer service representative who was helping him:

> **Atul kumar**(Mon Aug 6 15:19:32 CDT 2012)>
> You have chosen a great package with excellent features and benefits that I am certain you will enjoy. So let me go ahead and provide you with the best customer service experience as well.
>
> **Atul kumar**(Mon Aug 6 15:19:47 CDT 2012)>
> Comcast has recently adopted stricker [sic] Federal guidelines to protect our customers from Identity theft. In order for me to create your Comcast account, I'm required to do a Credit Check. May I have the following information in order to process a credit check. Your complete Social Security Number?
>
> **Guest_**(Mon Aug 6 14:20:42 CDT 2012)>
> on your website it says that I can pay a deposit of $50 and not have a credit check performed. I would like to do this
>
> **Atul kumar**(Mon Aug 6 15:20:58 CDT 2012)>
> Ok
>
> **Atul kumar**(Mon Aug 6 15:21:20 CDT 2012)>
> Please allow me few moment.
>
> **Atul kumar**(Mon Aug 6 15:28:55 CDT 2012)>
> I will process the order but you need to verify the ID at the time of installation by submitting valid ID proof to the Techinicians [sic].

(Aff. of John R. Newlin ¶ 7, ECF No. 21-1.) The Plaintiff paid $50 to Comcast by credit card that same day.

Comcast obtained a copy of the Plaintiff's consumer report.

## ANALYSIS

The Plaintiff alleges in his Complaint that Comcast violated 15 U.S.C. § 1681b(f) and 1681n when it obtained the Plaintiff's consumer report "willfully without a permissible purpose." (Compl. ¶ 13.a, ECF No. 1.) Section 1681b(f) provides that a person "shall not use or

2

obtain a consumer report for any purpose" except those purposes that are "authorized" under the statute. The authorized, or permissible, purposes for obtaining a report are provided in § 1681b(a), and allow reports to be provided to persons who have "a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i). A person who willfully fails to comply with the requirements of the FCRA when obtaining a consumer report may be civilly liable to the consumer. 15 U.S.C. § 1681n (civil liability for willful noncompliance).[1]

The Plaintiff argues that the legitimate business need that Comcast normally would have had when a consumer initiates a business transaction, like the one the Plaintiff initiated for cable services, "evaporated" when Comcast "agreed to accept a full deposit of fifty dollars and valid ID proof to the technician in lieu of a credit check." (Pl.'s Br. 4, ECF No. 21.) The success of the Plaintiff's argument necessitates two findings. First, the Court must find that the Plaintiff and Comcast indeed entered into such an agreement. In addition, the Court must be persuaded that the existence of such an agreement eliminates an otherwise legitimate business need for a consumer report, and makes any action in breach of the agreement a violation of the FCRA.

In support of his Motion for Partial Summary Judgment, the Plaintiff designates his affidavit as evidence. With respect to the formation of the agreement and its terms, the Plaintiff cites to a policy that Comcast published on its website, and to the thread of the online conversation he had with the customer service representative. According to the Plaintiff, the website policy stated as follows:

---

[1] The FCRA also creates a private right of action for negligent violations of the statutory requirements. *See* 15 U.S.C. § 1681o. It appears that the Plaintiff has sued solely under the provision of the FRCA that requires a violation to have been willful. According to the Plaintiff, he will only conduct discovery pertaining to willfulness if he first succeeds in establishing liability as a matter of law.

> Comcast Credit Policy
>
> A credit check and/or deposit is required for new customers (and customers with less than six (6) months of payment history) who lease more valuable Comcast equipment or request Comcast Digital Voice services with a new phone number. If you select a credit check, you may also be asked to pay a partial deposit. If you do not want a credit check, you may choose to pay the full deposit. The full amount of any deposit will be applied to your account balance after twelve (12) months, as long as the account has been in good standing for the previous six (6) months.

(Pl.'s Aff. ¶ 6, ECF No. 21-1.) Based on this policy, the Plaintiff believed that Comcast would agree to forego a credit check if he paid a $50 deposit, and the Plaintiff in fact requested that he be allowed to pay the $50 deposit instead. The conversation thread reveals that, in response to the Plaintiff's request, the customer service representative stated that he would need a few moments. The next entry indicates that the representative would process the order, but Comcast would require that the Plaintiff provide identification at the time service was installed.

Despite the language on the website, the communication between the Plaintiff and the Comcast representative provides no clear indication that Comcast actually agreed that it would not request a consumer report if the Plaintiff paid $50. Although the evidence shows that the Plaintiff reasonably believed that Comcast would not inquire about his credit, it is insufficient to show that Comcast actually agreed to these terms. Indeed, the representative cited stricter federal regulations to prevent identity theft as the reason for the consumer report. The policy refers to credit checks and security deposits for the lease of more valuable Comcast equipment or Comcast Digital Voice services with a new phone number. The representative's stated need for the consumer report did not appear to be one that could be eliminated by paying a deposit. There is too much missing from the record at this stage of the case regarding the "outward manifestation" of the parties' intent to determine whether it was the same and thus constitutes a

meeting of the minds, *see Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (stating that "[a] meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract"), particularly in the context of a larger service contract with numerous terms and conditions. Genuine issues of material fact remain as to whether a meeting of the minds was reached on the critical issue—that Comcast would not obtain a consumer report if the Plaintiff requested that Comcast accept a payment of $50 instead. Accordingly, judgment in favor of the Plaintiff is not appropriate on the record before the Court. *See Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) (noting that where the burden of proof is on the moving party, summary judgment may only be granted where the evidence is so one-sided that it must prevail as a matter of law) (citing *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992)).

The next question the Court must consider is whether a consumer can trump a business's statutory right to request a consumer report by claiming (and even proving) that the parties entered into a separate agreement not to request the report. That is, even if the agreement alleged by the Plaintiff existed, did Comcast's credit inquiry violate the FCRA, or did it violate only the parties' agreement? The latter would simply be addressed by remedies for breach of contract. The former is addressed by 15 U.S.C. § 1681n, which makes any person who willfully fails to comply with the requirements of the FCRA liable to the consumer in an amount equal to the sum of actual damages of not less than $100 and not more than $1,000, punitive damages, and attorney's fees and costs.

According to the Federal Trade Commission's interpretation of the FCRA, "[w]hen permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish,

5

consumer reports without the consumers' permission or over their objection." 16 C.F.R. Ch. 1, Pt. 600, Appendix, § 604.2. Thus, the Plaintiff's objection to Comcast obtaining his credit report, standing alone, would not suffice to overcome a legitimate business need. This Court could not locate any circuit court decision that has permitted parties to contract away rights conferred by the statute after a consumer has initiated a business transaction.

The Second Circuit, in *Scott v. Real Estate Finance Group*, 183 F.3d 97 (2d Cir. 1999), considered a similar, but distinct, issue. In *Scott*, the plaintiffs used the services of a real estate broker to find a rental home. According to the plaintiffs, they expressly conditioned their offer to rent a particular home on the homeowner being willing to forego a credit check. The homeowner rejected the condition and insisted on credit checks, and the real estate broker obtained the plaintiffs' consumer reports without their knowledge. The court held that the broker did not have a legitimate business need for the plaintiffs' consumer report under those circumstances. *Scott*, 183 F.3d at 100 (stating that a fact finder who credited the plaintiffs' testimony "could find that they conditioned their offer to rent on the owner's willingness to forego a credit check" and that the broker thus "knew that there was no longer a pending transaction" between the homeowners and the plaintiffs "as soon as his clients insisted on the credit report"). The court reasoned that parties who structure negotiations so that an offer to enter a business transaction is made with the express condition that no credit check will be conducted, have expressed interest "too inchoate" to give the other party a legitimate business need in connection with a business transaction. *Id.*; *see also Uhlig v. Berge Ford Inc.*, 257 F. Supp. 2d 1228, 1233–34 (D. Ariz. 2003) (stating that parties can contractually agree that there is no permissible purpose if the consumer conditions the transaction on there being no credit report).

6

The Plaintiff relies on both *Scott* and *Uhlig* to support his claim. The Court finds *Scott* and *Uhlig* distinguishable from the facts presented here, at least on the record at this stage of the proceedings. When there are serious doubts whether a business transaction is pending at all—which is what triggers the statutory right in the first place—is significantly different than the scenario the Plaintiff presents in this case. Here, the Plaintiff clearly initiated a business transaction and took the steps to bring it to completion so he could receive Comcast's services. There is no indication in the current record that the Plaintiff definitively and expressly indicated to Comcast up front that he would only agree to obtain its services if the credit report requirement was waived. The Plaintiff's selection of a service package, and presumably his agreement to pay for those services, was sufficiently clear to rise to the level of a pending business transaction. The expression of his preference to pay a deposit instead of submit to a credit check did not, by itself, render his previous expression of interest "too inchoate" to give Comcast a legitimate business need for the information. But the Court does not have all of the facts relating to what transpired after the expression of interest either. It is reasonable to assume that the reason the Plaintiff did not cancel the transaction on the spot, i.e. condition the transaction on no consumer report being obtained, is that he believed Comcast would honor his preference. Although Comcast's response arguably suggested that no credit check would be performed, the factual record is too slight at this stage in the proceedings to make this inference in favor of the moving party or to definitively determine the ramifications of the parties' interaction. So while *Scott* and *Uhlig* are distinguishable, the Court is not prepared to say that there are no facts consistent with the facts already in the record in this case that would negate the pending transaction that created the permissible purpose for obtaining the Plaintiff's consumer

7

report. This cause cannot be resolved on summary judgment.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Partial Summary Judgment [ECF No. 20]. The parties are directed to file a STATUS REPORT with the Court by April 21, 2014, indicating whether the case is ready to proceed to trial or other resolution.

SO ORDERED on March 24, 2014.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION