UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JOHN R. NEWLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:12-CV-430-TLS |
| | ) | |
| COMCAST CABLE OF INDIANA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, John R. Newlin, sought cable services from Defendant Comcast Cable of Illinois/Indiana/Michigan, Inc.. After the Plaintiff discovered that the Defendant had obtained his credit report, despite the Plaintiff having invoked the Defendant's policy to accept a $50.00 deposit and positive proof of identification in lieu of checking his credit, he sued the Defendant for statutory damages under the Fair Credit Reporting Act (FCRA), specifically § 1681n of Title 15 of the United States Code, as he did not suffer any actual damages. The Defendant does not deny that it obtained the consumer report, but disagrees that it violated the FRCA, much less that it committed a willful violation. The parties proceeded to trial without a jury. Pursuant to Federal Rule of Civil Procedure 52(a), and after observation of the witnesses at trial and review of the trial exhibits, the Court enters the following written findings of facts and conclusions of law.

**FINDINGS OF FACT**

At trial, the Court heard testimony from the Plaintiff and from Rosario Sanfelice, Comcast's Director of Credit and Collections. The following facts are based on admitted exhibits and from testimony elicited at trial, and are undisputed except where noted.

In August 2012, the Plaintiff sought to buy cable services for his existing home. The

Plaintiff and his wife settled on receiving services from the Defendant after reviewing the company's packages, pricing, and billing and credit policies. Because the Plaintiff and his wife anticipated looking for a new home and obtaining a mortgage, the Plaintiff considered it important that the Defendant's credit policy, which he obtained from its website, would permit him to avoid having his credit report reviewed. The policy provided:

> A credit check and/or deposit is required for new customers (and customers with less than six (6) months of payment history) who lease more valuable Comcast equipment or request Comcast Digital Voice services with a new phone number. If you select a credit check, you may also be asked to pay a partial deposit. If you do not want a credit check, you may choose to pay the full deposit. The full amount of any deposit will be applied to your account balance after twelve (12) months, as long as the account has been in good standing for the previous six (6) months.

(Tr. Ex. 3.) The Plaintiff was being diligent about his credit rating and believed that a check on his credit would negatively impact his credit score.

On August 6, 2012, the Plaintiff contacted Comcast using the online instant messaging services available through the company's website. After he had selected the cable television services he wished to purchase, the following exchange took place between the Plaintiff and the customer service representative who was helping him:[1]

> **Atul kumar**>
> You have chosen a great package with excellent features and benefits that I am certain you will enjoy. So let me go ahead and provide you with the best customer service experience as well.
>
> **Atul kumar**>
> Comcast has recently adopted stricker [sic] Federal guidelines to protect our customers from Identity theft. In order for me to create your Comcast account, I'm required to do a Credit Check. May I have the following information in order

---

[1] The representative was employed by a third-party vendor that Comcast relies on to process new orders for Comcast services.

> to process a credit check. Your complete Social Security Number?
>
> **Guest_>**
> on your website it says that I can pay a deposit of $50 and not have a credit check performed. I would like to do this
>
> **Atul kumar>**
> Ok
>
> **Atul kumar>**
> Please allow me few moment.
>
> **Atul kumar>**
> I will process the order but you need to verify the ID at the time of installation by submitting valid ID proof to the Techinicians [sic].
>
> **Guest_>**
> yes ok
>
> **Atul kumar>**
> Thank you.
>
> **Atul kumar>**
> I will send you the secured link for payment.
>
> **Guest_>**
> ok

(Trial Ex. 1.) The Plaintiff paid $50 to Comcast by credit card, which Kumar acknowledged had been processed. Kumar stated that the Plaintiff had successfully created an account, and that his "estimated first month's bill will be $32.04 including taxes and fees as you have made the payment of $50.00." (*Id.*)[2]

On this same date, Comcast obtained a copy of the Plaintiff's consumer report. According to Comcast procedures, a credit report is run when an order is created if the box for

---

[2] The fee was a one-time installation fee of $34.99. Kumar also confirmed that the regular monthly charges would be $39.99 plus taxes.

3

"risk management" remains checked during the ordering process. The risk management option is intended to minimize Comcast's risk of not receiving payment for equipment and bills, and to protect the consumer's identity. The ordering system's default setting is for the box to be marked. If a consumer declines, then the box is unchecked and the representative verifies identification and collects a $50 deposit. However, $50.00 does not cover the actual cost of Comcast equipment or the typical monthly service charges. The Plaintiff's bills reflect that his first month's bill was reduced by $50, which meant that Comcast (more accurately, the third party vendor) did not delineate his payment as a deposit.

The Plaintiff learned that Comcast had run his credit when he obtained his credit report from Equifax Credit Report. The Plaintiff canceled his services with Comcast due to its handling of the situation.

**ANALYSIS**

The Plaintiff alleges that Comcast violated 15 U.S.C. § 1681b(f) and 1681n when it obtained the Plaintiff's consumer report without a permissible purpose. Section 1681b(f) provides that a person "shall not use or obtain a consumer report for any purpose" except those purposes that are "authorized" under the statute. The authorized, or permissible, purposes for obtaining a report are provided in § 1681b(a), which allows a report to be provided to a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" or who "otherwise has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the

4

consumer." 15 U.S.C. § 1681b(a)(3). A person who "willfully fails to comply" with the requirements of the FCRA when obtaining a consumer report may be civilly liable to the consumer. 15 U.S.C. § 1681n(a) (civil liability for willful noncompliance).

A company has a legitimate business need when it assesses a consumer's eligibility for a business service, and to verify the identity of the consumer to prevent identity theft. *See Bickley v. Dish Network, LLC*, 751 F.3d 724, 731 (6th Cir. 2014) (finding that service providers "have a legitimate interest in confirming that prospective consumers are who they claim to be and are eligible for services. This prevents the corporation from providing services that might not be reimbursed and protects innocent consumers . . . whose identity might otherwise be stolen"). The Plaintiff argues that the parties structured the August 6, 2012, transaction so that no legitimate need arose because Comcast, pursuant to its policy, agreed to accept a $50 deposit in lieu of performing a credit check. The Court finds that, even if Comcast lacked a legitimate business need based on this arrangement and thus violated the FRCA, the Plaintiff has not established that Comcast's violation was willful, a necessary showing to obtaining any recovery under 1681n.

In *Safeco Insurance Co. of America v. Burr*, the Supreme Court analyzed whether the phrase "willfully fails to comply" in section 1681n(a) extends to reckless behavior. 551 U.S. 47 (2007). The Supreme Court held that liability under section 1681n extends to actions known to violate the FCRA, as well as to actions stemming from a reckless disregard of a statutory duty. *Id.* at 57–58. The Court explained that "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836

5

(1994)). The Court concluded that "a company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* The Court found that even though one of the two defendants had violated the statute, the violation was not reckless because it was based on a reasonable reading of the FCRA, and because there was no authoritative guidance from either the courts of appeal or the Federal Trade Commission on how the statute should be interpreted. *Id.* at 70.

It is not clear whether Comcast believed consumer permission was statutorily necessary to run a credit check, or was just a normal aspect of its business practice. It is likewise unclear whether Comcast thought that, by offering the payment of a deposit as an alternative to running a credit check, an otherwise legitimate business need would be dissolved and it would be exposing itself to statutory damages if it then obtained a consumer report. There is certainly no authoritative guidance from the Federal Trade Commission on the impact of the parties' agreement on the legitimate business need. And the only circuit opinion remotely on point is a 1999 decision from the Second Circuit. *See Scott v. Real Estate Fin. Grp.*, 183 F.3d 97 (2d Cir. 1999). In *Scott*, the plaintiffs used the services of a real estate broker to find a rental home. According to the plaintiffs, they expressly conditioned their offer to rent a particular home on the homeowner being willing to forego a credit check. The homeowner rejected the condition and insisted on credit checks, and the real estate broker obtained the plaintiffs' consumer reports without their knowledge. The court held that the broker did not have a legitimate business need for the plaintiffs' consumer report under those circumstances. *Id.* at 100 (stating that a fact finder

who credited the plaintiffs' testimony "could find that they conditioned their offer to rent on the owner's willingness to forego a credit check" and that the broker "knew that there was no longer a pending transaction" between the homeowners and the plaintiffs "as soon as his clients insisted on the credit report"). The court reasoned that parties who structure negotiations so that an offer to enter a business transaction is made with the express condition that no credit check will be conducted, have expressed interest "too inchoate" to give the other party a legitimate business need in connection with a business transaction. *Id.*

In the end, the answers to whether a legitimate business need existed after the Plaintiff expressed his desire to pay a deposit is not relevant because nothing presented at trial demonstrates that the Defendant acted knowingly, intentionally, or recklessly in disregarding the protections of the FCRA. The Plaintiff argues that the evidence shows that Comcast knew, through Kumar, that "it had no reason to pull Mr. Newlin's credit report." (Pl.'s Post-Trial Br. 8.) This argument ignores the evidence pointing to the conclusion that Kumar made an error during the ordering process that negated any such knowledge. According to credible trial testimony, if Kumar had unchecked the default for risk management, Comcast would not have obtained the consumer report. The testimony also revealed that the Plaintiff's $50 credit card payment was applied as a payment instead of being held as a deposit. Once a mistake was made in the ordering process and the risk management box remained checked, Comcast obtained the report, but it did not do so knowing that it was violating the FRCA or the Plaintiff's rights. Perhaps a reasonable person in Kumar's position would have known that he should uncheck the box, but that goes to negligence, not willfulness. *See, e.g., Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (comparing the known or obvious risk of failing to delete the

expiration date on the consumer's credit-card or debit-card purchase receipt with a negligence standard that would ask whether a reasonable person would have deleted it). By relying on the risk management default setting in its ordering system, Comcast did not take any risks of violating the law that were substantially greater than those that can be associated with ordinary carelessness.

The Court finds that Comcast did not knowingly and intentionally ignore the Plaintiff's desires to avoid a credit check (although it certainly would have appeared that way to the Plaintiff who was not privy to Comcast's internal documentation). Despite having the burden to prove Comcast's violation was willful, the Plaintiff did not attempt to present any evidence that Comcast had a deliberate policy of ignoring consumer requests pertaining to credit reports, or a deliberate practice of ignoring its own policy with respect to the deposits, or that it was aware of problems with its system but took no remedial action. *Cf. Redman*, 768 F.3d at 638 ("The company had to know that there was a risk of error because the identical risk *had materialized previously*. Knowing the risk and failing to take any precaution against it—though a completely adequate precaution would have cost nothing—were indicative of willful violation.") (emphasis added). The existence of a willfulness requirement in the FRCA statute bars recovery in this case.

## CONCLUSION

For the reasons stated above, the Court finds that the Defendant is entitled to a verdict in its favor.

SO ORDERED on January 27, 2015.

8

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION